822 F.2d 55
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John DOE, Plaintiff-Appellee,
v.
James A. BAKER, III, Secretary, Department of Treasury;
Stephen E. Higgins, Director, United States Bureau
of Alcohol, Tobacco and Firearms,
Defendant- Appellant.
 No. 86-3711.
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1987.
Decided June 23, 1987.
 
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Richard Alan Olderman, for appellant.
 George Michael Chuzi, for appellee.
 PER CURIAM:
 
 
 1
 The defendants, the Secretary of the Treasury, the Director of the Bureau of Alcohol, Tobacco and Firearms, and the United States Department of the Treasury, appeal in a case brought in the United States District Court for the District of Maryland under the Privacy Act, 5 U.S.C. Sec. 552 et seq., and the Mandamus Act. 28 U.S.C. Sec. 1361. The plaintiff, an employee of the Bureau of Alcohol, Tobacco and Firearms, prevailed in the district court.
 
 
 2
 * The plaintiff, proceeding under the name John Doe, has been a special agent of the Bureau of Alcohol, Tobacco and Firearms since before 1981. BATF is organized under the United States Department of the Treasury.
 
 
 3
 In 1981, while Doe was engaged in a bitter divorce, the Treasury Department received an anonymous telephone call from a woman accusing Doe of battering women, of misusing his assigned official vehicle, and of frequently carrying a gun and driving while intoxicated. When the caller was questioned in an attempt to obtain specifics, she became upset and terminated the telephone conversation.
 
 
 4
 The allegations were referred to BATF special agents Edgar Booher and Phyllis Shantz of BATF's Office of Internal Affairs for investigation. Booher engaged in surveillance of Doe between December 3, 1981 and January 30, 1982. Booher and Shantz also reviewed Doe's official reports and official diary.
 
 
 5
 The investigation produced no evidence that Doe battered women or ever became intoxicated. Booher and Shantz did turn up Barbara Huff, who signed an affidavit stating that on approximately six occasions from March 1981 to May 1981, when she and Doe were dating, Doe drove to her residence using what he said was his "government car." Huff further stated in her affidavit that Doe once drove in that vehicle to a restaurant to meet her.
 
 
 6
 During the surveillance period Booher saw Doe drive his assigned official car to a certain apartment building (where Doe did not formally reside) on four occasions. On the second of those occasions, Booher saw Doe pick up at the federal courthouse in Baltimore a woman later identified as Carol Ann McGinnis, an employee of U.S. Magistrate Paul M. Rosenberg, and drive her to the apartment building. McGinnis lived in the building. On the third occasion, Booher saw Doe meet McGinnis at the building.
 
 
 7
 Doe claimed overtime hours in his official reports and in his official diary for at least some of the time spent going to, or at, that apartment building, on three of the four occasions observed by Booher. When interviewed by Booher and Shantz, Doe allegedly gave little or no explanation of why those hours were work hours. McGinnis refused to be interviewed. Magistrate Rosenberg was interviewed, and stated that he had never assigned McGinnis any BATF work to take home.
 
 
 8
 On July 19, 1982, Doe received written, advance notice from his supervisor, Michael Bregman, that BATF proposed to suspend Doe for forty-five days.[1] The Notice stated two reasons for Doe's suspension: (1) "Willful Misuse of Assigned Government Vehicle" (based on Huff's affidavit and Booher's observations of the apartment building and McGinnis), and (2) "Falsification of Official Records" (based on overtime hours claimed in the official reports and diary involving the apartment building and McGinnis).
 
 
 9
 Doe appealed the proposed suspension to BATF's Regional Director of Investigation, Nicholas M. Angell.[2] On August 14, 1982, in support of his appeal, Doe submitted a 130 page response to the Notice's charges.
 
 
 10
 On September 9, 1982, after considering the written evidence and Doe's response (Doe having declined to offer oral evidence), Angell issued Doe a thirty day suspension. In the letter of suspension Angell wrote: "I find, however, that all of the reasons and specifications stated in [the Notice] are fully supported by the evidence...."
 
 
 11
 On October 8, 1982, Doe appealed his suspension to the Merit Systems Protection Board.[3] The MSPB process here involved two administrative steps: (1) a hearing before a "Presiding Official" of the Board, an ALJ, and (2) review, upon petition, by the full MSPB.[4] Doe engaged in substantial discovery before his hearing.
 
 
 12
 Doe deposed Bregman and Booher. Both deponents testified that they had no evidence that Doe's official reports and diary (reporting his work hours) were false.
 
 
 13
 On January 14, 1983, Doe deposed Angell. Despite what he had written in the suspension letter, Angell testified that he had suspended Doe only for misuse of his assigned government car.
 
 
 14
 On February 24, 1983, MSPB Presiding Official Eve Montgomery conducted a hearing on Doe's appeal. After BATF's first two witnesses testified, BATF withdrew the falsification of documents charge. BATF's reasons for doing so are disputed, and are not entirely clear.
 
 
 15
 The Presiding Official responded to BATF's withdrawing the falsification of documents charge by saying:
 
 
 16
 All right. Then I rule that that issue is no longer before the [MSPB]. [Doe] has a right to have his record expunged. I would expect [BATF] to remove all references to a falsification of documents charge from [Doe's] records. Any testimony that comes out today and any evidence in the Appeal file regarding falsification of government documents will be stricken, and I won't consider it in adjudicating this case.
 
 
 17
 While the Presiding Official's final decision was pending, Doe tried to get BATF to follow the Presiding Official's expunction "order." BATF did not do so.
 
 
 18
 On May 27, 1983, the Presiding Official issued her opinion, finding in Doe's favor on the misuse of vehicle charge (the falsification of documents having been already disposed of in Doe's favor). The evidence adduced by BATF at the hearing had been very weak, and sometimes supported Doe. There was, for example, a second affidavit of Huff consistent with Doe's testimony that he actually had not driven his assigned official car to Huff's home. There was evidence that Booher had prompted Huff's use of the term "government car" in her affidavit, that Booher had failed to follow up on Doe's explanations of his activities, and that Booher had not really determined whether Doe had or had not been working when his official reports and diary so stated. The Presiding Official also made credibility determinations in favor of Doe.
 
 
 19
 The Presiding Official's opinion is very thorough. Of course, her rejection of the misuse of vehicle charge also undercuts the basis of the withdrawn falsification of documents charge, because both allegations depended upon the theory, rejected by the Presiding Official as inadequately supported, that Doe had not been working when he said that he was.
 
 
 20
 BATF appealed the Presiding Official's decision to the full MSPB. Doe also appealed, seeking attorneys' fees.
 
 
 21
 On July 22, 1983, while the administrative appeals were pending, Doe wrote to the Presiding Official stating that BATF had not complied with her expunction "order" of February 24, 1983. The Presiding Official responded on August 2, 1983, writing that Doe's request for an enforcement order was premature because of the pendency of BATF's appeal to the full MSPB, and that requests for expunction of records should be made pursuant to the Privacy Act.
 
 
 22
 On September 7, 1983, Doe filed a petition with the Director of the Philadelphia Regional Office of the MSPB seeking enforcement of the Presiding Official's "order" of February 24, 1983. The petition was dismissed for lack of jurisdiction, presumably because of the pendency of the appeals to the full MSPB.
 
 
 23
 On January 3, 1984, counsel for Doe wrote to the Director of the BATF, requesting expunction of the falsification of documents charge from Doe's records.[5] The Director of the BATF denied the request on January 23, 1984, stating that the issue of the expunction of Doe's records was before the full MSPB. Of course, the falsification of documents charge alone was not before the MSPB because it had been withdrawn.
 
 
 24
 On May 11, 1984, the full MSPB upheld the Presiding Official's decision of May 27, 1983. The MSPB denied Doe's request for attorneys' fees. The MSPB apparently issued no opinion.
 
 
 25
 On June 12, 1984, Doe filed a formal request with BATF under the Privacy Act, basically seeking expunction of the entire matter from his records. On July 13, 1984, BATF denied that request. On July 18, 1984, Doe filed an administrative appeal to the Director of the BATF. On September 14, 1984, the Director of the BATF agreed to remove two personnel forms from Doe's personnel file, but otherwise denied the appeal. Doe was given the opportunity to supplement the internal affairs file if dissatisfied with its accuracy or completeness.
 
 
 26
 Meanwhile, on June 21, 1984, Doe filed a motion before the Presiding Official for attorneys' fees.[6] The Presiding Official denied Doe's motion for attorneys' fees on September 14, 1984. Doe appealed, and the MSPB affirmed on January 7, 1985.
 
 
 27
 While the attorneys' fees motion was pending, on July 18, 1984, Doe filed a petition with the Director of the Philadelphia Regional Office of the MSPB seeking, inter alia, an order that BATF expunge all records relating to Doe's suspension and the purported grounds therefor. BATF submitted two affidavits in response; one affidavit that Doe's personnel file had been expunged, and one that BATF's adverse action file had been expunged. The Director of the Philadelphia Regional Office of the MSPB dismissed the petition as to expunction as moot.
 
 
 28
 There are two other BATF affidavits in the Joint Appendix of approximately the same date as the two just mentioned. One of those other affidavits deals with Doe's personnel file, while the other affidavit deals with the file of the BATF's Office of Internal Affairs. The second affidavit inventories the internal affairs file, and basically argues for the retention of its contents, but that affidavit apparently was not submitted during the enforcement proceeding before the Director of the Philadelphia Regional Office of the MSPB.
 
 
 29
 In the midst of much of the foregoing, Doe filed his original Complaint in federal court on October 28, 1983. He filed an Amended Complaint on April 5, 1984. Finally, with leave of court granted shortly later, Doe filed a Second Amended Complaint on October 24, 1984.[7] Doe sought expunction, damages and attorneys' fees.
 
 
 30
 In discovery and other pretrial proceedings in the district court it became clear that the center of the remaining expunction dispute was the file of BATF's Office of Internal Affairs. On March 20, 1985, the defendants moved for summary judgment. Doe filed a cross-motion for summary judgment. Both sides agreed that there were no genuine issues of material fact precluding summary judgment (save for the amounts of Doe's damages and attorneys' fees).
 
 
 31
 The district court heard argument on the motion and cross-motion for summary judgment on February 20, 1986. The district court issued a bench opinion granting Doe's cross-motion for summary judgment. The district court filed an order on February 27, 1986 providing in part:
 
 
 32
 Defendants and each of their organizational components shall expunge every copy of the challenged Report of Investigation at issue in this case and every other document derived from or associated with defendants' investigation and suspension of plaintiff....
 
 
 33
 On May 9, 1986, the district court granted Doe's request for attorneys' fees,[8] awarding Doe $27,993.50.
 
 
 34
 On June 13, 1986, the district court held a hearing on Doe's damages claim.[9] The only evidence offered at the hearing was Doe's testimony.
 
 
 35
 On June 19, 1986, the district court filed both an Order and a civil Judgment. The district court in both the Order and the Judgment awarded Doe damages of $48,432.80 (Doe's annual salary at the time). The district court's Order also provided:
 
 
 36
 That defendants' [sic] and each of their organizational components shall expunge nunc pro tunc every copy of the challenged Report of Investigation at issue in this case and every other document derived from or associated with defendants' investigation and suspension of plaintiff....
 
 
 37
 The district court's Judgment did not in so many words provide for expunction of records.
 
 
 38
 On August 14, 1986, the defendants filed a notice of appeal stating in relevant part that the defendants appealed "from [the district court's] Order entered on June 19, 1986."
 
 
 39
 Both the falsification and the misuse of official vehicle charges were expunged from Doe's personnel file and the adverse action file before the district court entered its Order and civil Judgment. The falsification charge has been expunged from the internal affairs file since that time.
 
 
 40
 In the internal affairs file the misuse of official vehicle charge and its resolution in Doe's favor are set forth fully and apparently accurately. Doe was invited to supplement that material in the internal affairs file in any manner he deemed appropriate to make sure that the file was accurate and complete. He chose not to do so. The defendants seek to overturn the district court's Order and civil Judgment as to damages and as applied to the documentation of the misuse of official vehicle charge in the internal affairs file.
 
 II
 
 41
 The defendants in their brief put two issues before the Court:
 
 
 42
 (1) Was the expunction order of June 19, 1986 not authorized by the Privacy Act, unlawfully broad under the Privacy Act, or an abuse of discretion under equitable principles?
 
 
 43
 (2) Assuming that defendants violated the Privacy Act, was their violation intentional or willful, and did it adversely affect the rights of Doe, such that he was entitled to an award of damages under the Privacy Act?
 
 
 44
 We reach only the first issue.
 
 
 45
 The inclination to pretend that something never happened when it had unpleasant consequences is an appealing one. Nevertheless, historical accuracy is not served by such an approach. Even though all of the charges against Doe were shown not to be proven, the fact that they were made and the manner in which they were dealt with were, nevertheless, matters of possible pertinence, depending on what direction subsequent developments might take.
 
 
 46
 The Privacy Act requires each federal agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination...." 5 U.S.C. Sec. 552a(e)(5). To meet the statutory language it cannot be improper to tell the entire story accurately, including the pertinent parts thereof unfavorable to the government, at least where, as here, the misuse of government vehicle charge was not entirely baseless, being sufficiently grounded to require an extended hearing before it was disposed of.[10] Consequently, the requirement that the misuse of government vehicle charge be fully expunged was erroneous. Therefore, the judgment of the district court, to the extent that it required expunction of the charge of misuse of an official vehicle, is reversed. With respect to that charge, summary judgment should have been granted to the defendants.
 
 
 47
 The defendants do not ask that the district court's Order and civil Judgment be reversed as applied to documentation of the falsification charge. We must note, however, that the same evidence supported the falsification charge and the misuse of vehicle charge, notwithstanding the deposition testimony of Booher and Bregman. The same reasoning therefore would apply to an accurate and complete record of the falsification charge and its resolution in Doe's favor as applies to the other charge. For that reason, the district court's award of damages for an "intentional or willful" violation of the Privacy Act must also be reversed. See 5 U.S.C. Sec. 552a(g)(4)(A).[11] It would be inappropriate to allow an award of damages to stand for even an intentional or willful violation when there has been, in fact, no violation.
 
 
 48
 While the appeal was limited to the misuse of vehicle charge and the falsification of records basis for relief still stands, unappealed from, we detect no actual damages from the recordation of the falsification charge. It was the suspension which caused harm to Doe but it was based on the misuse of vehicle charge as well as the falsification charge. He has been fully reinstated with all back pay. The falsification charge has ultimately been expunged. We fail to perceive cognizable damages.
 
 
 49
 REVERSED AND REMANDED FOR ENTRY OF AN APPROPRIATE ORDER.
 
 
 
 [1]
 Such notice is required by 5 U.S.C. Sec. 7513(b)(1), for suspensions of at least thirty days, 5 U.S.C. Sec. 7512(2), for federal employees, such as Doe, who fall under 5 U.S.C. Sec. 7511(a)(1)
 
 
 [2]
 The "appeal" was the first level of administrative proceeding. See 5 U.S.C. Sec. 7513(b) and (c)
 
 
 [3]
 Doe had a right to appeal because his suspension was for more than fourteen days. 5 U.S.C. Secs. 7512(2), 7513(d) and 7701(a)
 
 
 [4]
 See 5 U.S.C. Sec. 7701 et seq
 
 
 [5]
 As will become clearer below, three files have been at issue: (1) Doe's personnel file, (2) BATF's "adverse action" file, and (3) the file of BATF's Office of Internal Affairs ("the internal affairs file")
 
 
 [6]
 Doe's attorneys' fees motion was filed pursuant to 5 U.S.C. Sec. 7701(g)(1)
 
 
 [7]
 It is conceded by BATF that, by the time of his Second Amended Complaint, Doe had exhausted administrative remedies as required by the Privacy Act. 5 U.S.C. Sec. 552(g)(1)
 
 
 [8]
 See 5 U.S.C. Sec. 552a(g)(2)(B) (authorizing attorneys' fees awards)
 
 
 [9]
 See 5 U.S.C. Sec. 552a(g)(4)(A) (authorizing damages awards)
 
 
 [10]
 The instant case is not one where an agency file contains allegedly false charges that are not officially and authoritatively rejected by other documents in the file. Cf. Doe v. United States, No. 84-5613, slip op. at 11 (D.C.Cir. en banc June 19, 1987) (dictum); Hewitt v. Grabicki, 794 F.2d 1373, 1378 (9th Cir. 1986) (dictum); DeBold v. Stimson, 735 F.2d 1037, 1041 (7th Cir. 1984) (dictum). We are likewise unpersuaded that equity compels, or allows, without running roughshod over the Privacy Act and the congressional intent expressed in it, on the facts of the instant case, the expunction of accurate and complete records. To the extent that the district court's order and civil judgment rest upon an alternative, equitable ground, that constituted an abuse of discretion
 
 
 [11]
 In passing we take the opportunity to express doubt about the seemingly arbitrary use of a figure equal to one year's salary to determine damages in a case like this. There should be some greater connection between an actual damages award and the hurt which took place